**UNITED STATES**

v.

**Airman First Class William G. TALLON, Jr., FR 522–82–4081, United States Air Force.**

**ACM 27128.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 25 June 1988.

Decided 29 March 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain William E. Boyle.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Jeffrey H. Curtis.

Before HODGSON, HOLTE and PRATT, Appellate Military Judges.

### DECISION

HOLTE, Judge:

Before a judge alone general court-martial the appellant pleaded not guilty, but contrary to these pleas was found guilty of one violation of absence without leave, one specification each of wrongful possession of cocaine and wrongful possession of marijuana, one specification of wrongful use of marijuana, one specification of larceny of lawful currency in the amount of $640.00, and four specifications of uttering worthless checks with intent to defraud. The adjudged and approved sentence extended to a bad conduct discharge, confinement for 24 months, forfeiture of $300.00 pay per month for 24 months, and reduction to the grade of airman basic.

The issues in this appeal involve only wrongful possession of marijuana and co-

caine which are set forth as specifications 1 and 2 of Charge I as violations of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a.

On 17 March 1988 the Omaha, Nebraska, Police Department was informed by a reliable informant that the house at 3332 Ruggles was the site of a crack cocaine operation. Given $50.00 of marked narcotic money, the informant, while being observed by officers, went into the residence and purchased rock cocaine. Based on this information a local judge issued a no-knock search warrant. A stake out of the residence was then initiated.

Early in the morning of 18 March 1988, a gold Cougar automobile with three persons therein, was observed parked across the street from 3332 Ruggles. The appellant was the driver of this vehicle. Another vehicle stopped at the residence. An individual got out of that automobile and entered the residence. About a minute later, this individual exited the house and entered the vehicle which then drove off. The stake-out officers then observed a black individual, later identified as Samuels, exit the back seat of the Cougar and walk up to and enter the residence. Shortly thereafter he exited the house and returned to the back seat of the Cougar. Another automobile then parked in front of the house. A person exited this car, at which time Samuels exited the Cougar and the two entered the residence. After a short period of time, Samuels exited the residence, returning to and entering the Cougar which then drove off. The officers determined that they had sufficient probable cause to initiate an investigative stop. They explained that their intent was to get the identification of the people and if possible to obtain verbal permission from the occupants to search the vehicle.

When the vehicle was stopped Samuels bolted from the rear seat and began fleeing. He was pursued and subdued. After a brief scuffle, Officer Green noticed a snow seal [1] containing a white powder (be-lieved to be a controlled substance) on the ground nearby. Because the person who was in the back seat fled when the vehicle was stopped and because of the discovery of the snow seal, it was decided to search the rear seat of the vehicle. This search revealed drug abuse paraphernalia in the back seat of the vehicle and in the area between the front and back seats. A search of the appellant revealed a baggie of marijuana. After the appellant was transported to Central Station, a further search was conducted in which a small piece of crack cocaine was found on his person.

In his first assignment of error, the appellant alleges that the warrantless arrest was not based on probable cause and was therefore an unreasonable and unlawful seizure under the Fourth Amendment.

The first question to be answered is did the officers have justification for an investigative stop of the vehicle. The answer to this depends upon the reason(s) the stop was made. The evidence reveals that the officers knew (1) that 3332 Ruggles was a place where cocaine could be purchased because of information they had received from a confidential informant, who in fact had made a purchase at that address under police observation; (2) a no knock search warrant had been issued for this residence based on what the informant had stated and the purchase he had made; (3) the residence was under surveillance; (4) the appellant's automobile was noticed parked across the street from the residence; (5) a passenger in appellant's automobile on two occasions had entered the residence for a brief period of time; and (6) after the second time this passenger exited the residence he re-entered the appellant's vehicle which then departed the area.

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possi-

---

1. A type of packaging made of paper with several folds which is used to package heroin or cocaine.

ble criminal behavior even though there is no probable cause to make an arrest. *Cf.* Mil.R.Evid. 314(f)(1). To invoke the *Terry* standard, the investigative stop must be predicated on reasonable suspicion, based on objective facts, that the individual(s) were involved in criminal activity. *United States v. Texidor-Perez,* 7 M.J. 356 (C.M.A. 1979); *United States v. Bray,* 12 M.J. 553 (A.F.C.M.R.1981); *United States v. Leiffer,* 10 M.J. 639 (N.C.M.R.1980); *United States v. Thomas,* 10 M.J. 687 (A.C.M.R.1981). Based on the cited authority we conclude that a proper investigative stop was made.

■ The next question to be answered is whether the officers could use the fact of Samuels' conduct in fleeing from the vehicle to justify his apprehension and subsequent search of the rear seat of the vehicle. In *United States v. Robinson,* 6 M.J. 109 (C.M.A.1979), we learned that flight from a police officer is a proper factor in evaluating the requisite probable cause for apprehension; however, it is insufficient, standing alone, as there are too many innocent explanations for such flight. We need not decide whether his flight established probable cause for his arrest because it was the discovery of the snow seal near where Samuels was subdued that provided the probable cause for his apprehension and the search of the rear seat of the vehicle where he had been riding. With the evidence in this posture, it was insufficient at that time to apprehend and search the appellant. *United States v. Pope,* 3 M.J. 1056 (A.F.C.M.R.1977).

When officer Green was conducting the valid warrantless search of the rear seat, he discovered two Royal Crown Whiskey cloth bags.[2] These bags were recognized as the type that, among other things, drugs and drug paraphernalia were carried in. Each contained a glass pipe with residue, which the police recognized as the type of pipe used in smoking rock cocaine, and snow seals. Also found was a bottle of rubbing alcohol of the type which was used in smoking rock cocaine. One of these bags was found in the back seat, the other was found between the front seats, under the passenger front seat left side. At some point in time between the subduing of Samuels and the inception of the search of the vehicle, it had been established that the appellant was the owner of the vehicle. Again, at some point in time subsequent to the apprehension of Samuels the appellant was searched and marijuana found in his jacket pocket. The evidence is conflicting as to precisely when this search took place.

Officer Donlan testified that, when the paraphernalia was discovered in the car, the appellant was arrested for suspicion of possession of drug paraphernalia since he was the owner of the vehicle. This, he stated, was the justification for his apprehension and subsequent search incident to apprehension. Officer Green, who was searching the vehicle, testified that by the time he had completed the search of the vehicle, the appellant had already been searched and the marijuana found. For the purpose of deciding the issue before us it is not necessary to resolve this conflicting testimony. In our opinion, whichever version correctly states the timing of the apprehension and search of the appellant, the marijuana found was admissible.

■ Were we to conclude that Officer Donlan's recollection is correct, the search of the appellant was justified as a search incident to apprehension for the possession of illegal drug paraphernalia. The test for probable cause to apprehend is not proof beyond reasonable doubt, but information which would lead reasonable, cautious and prudent police officers to believe that an offense has been or is being committed. *United States v. Repp,* 23 M.J. 589 (A.F.C.M.R.1986); *United States v. Garrett,* 15 M.J. 601 (N.M.C.M.R.1982); *United States v. Gillis,* 6 M.J. 570 (N.C.M.R.1978); *United States v. Fisher,* 5 M.J. 873 (A.C.M.R. 1978). Following this scenario the evidence in question would be admissible, and the assigned error would be decided against the appellant.

■ Were we to conclude that Officer Green's recollection is correct, the search and seizure would have been conducted

---

2. These were the typical velvet bags that Crown Royal Whiskey comes in when purchased.

without probable cause and as a general rule would not have been admissible. However, we hold that the evidence in question was admissible pursuant to Mil.R. Evid. 311(b)(2).

As a general rule evidence obtained as a result of an unlawful search and seizure is inadmissible. Mil.R.Evid. 311(a). However, paragraph (b) of that rule provides for exceptions to the general rule. One of these exceptions provides that evidence obtained as a result of an unlawful search and seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made. Mil.R.Evid. 311(b)(2). This exception is the codification of the "inevitable discovery rule", which was first announced in military jurisprudence in *United States v. Kozak*, 12 M.J. 389 (C.M.A.1982). This rule is defined in *New York v. Fitzpatrick*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), wherein it was stated:

> Evidence obtained as a result of information derived from an unlawful search or other illegal police conduct is not inadmissible under the fruit of the poisonous tree doctrine where the normal course of investigation would, in any case, even absent the illicit conduct, have inevitably led to such evidence.

In *Kozak* the court stated that in applying this exception to the exclusionary rule, the prosecution must, by a preponderance of the evidence, establish to the satisfaction of the military judge that when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of evidence and that the evidence would have been discovered in a lawful manner had not the illegality occurred. 12 M.J. at 394. For evidence to fall within the inevitable discovery exception, absolute inevitability of discovery is not required. All that is required is simply a reasonable probability that evidence in question would have been discovered from other than a tainted source. *United States v. Lewis*, 15 M.J. 656 (N.M.C.M.R.1983). The Court of Appeals for the Tenth Circuit in *United States v. Romero*, 692 F.2d 699 (1982) was confronted with this same issue

on nearly an identical factual situation. In upholding the admission of the challenged evidence and the conviction, that court held that under the inevitable discovery exception to the exclusionary rule, unlawfully seized evidence is admissible if there is no doubt that the police would have lawfully discovered the evidence later.

In this case, assuming *arguendo* the accuracy of Officer Green's recollection of the sequence of events, the search of appellant was illegal in that it took place prior to the discovery of the drug paraphernalia in his vehicle. However, there can be no doubt that, following the discovery of the paraphernalia, the appellant's lawful apprehension and search incident thereto were inevitable. Similarly inevitable, then, was the discovery of marijuana on appellant's person during the search. It should be emphasized that the leads being pursued at the on site investigation were totally independent of the illegal conduct on the part of the police and were obtained in a lawful manner.

Having carefully and narrowly applied the inevitable discovery doctrine, it is our opinion that the facts before us clearly fall within the exception and the application thereof. *United States v. Haye*, 25 M.J. 849 (A.F.C.M.R.1988). The vital factor is the clear showing of record that the arrest of the appellant would have been made, and the search incident thereto conducted, even if the illegal search had not taken place.

We, therefore, hold that the marijuana discovered during the search of the appellant, even if the product of an illegal search, was properly admitted into evidence. The government established by a preponderance of the evidence that the evidence in issue would ultimately or inevitably have been discovered by lawful means because of information already in police officers possession or leads actively being pursued by the police officers.

For the reasons stated herein this assigned error is decided against the appellant.

**640**

Having decided the first assigned error against the appellant, the second assigned error is deemed to be without merit. Accordingly, the findings and the sentence are

AFFIRMED.

Judge PRATT concurs.

Chief Judge HODGSON (concurring in part/dissenting in part):

In *United States v. Pope*, 3 M.J. 1037 (A.F.C.M.R.1977), *aff'd on recon.*, 3 M.J. 1056 (A.F.C.M.R.1977), we held that the mere presence of an accused at the scene of a crime does not give probable cause for his apprehension. The person being apprehended must be a participant in the crime and not merely a knowing spectator. I fully agree with the majority that the police had probable cause to arrest Samuels when he bolted from the appellant's car. However, Samuels' flight and the discovery of drug abuse paraphernalia in the rear section of the appellant's car where Samuels had been sitting did not provide a basis to apprehend the appellant. Basically, the evidence established that a passenger in the appellant's car was found to possess drugs. This, in my opinion, is not sufficient cause to apprehend the appellant. Since probable cause was lacking to apprehend the appellant, the marijuana found on his person at that time and the cocaine later discovered at the police station should not have been admitted. I would dismiss Specifications 1 and 2 of Charge I. I would affirm the remaining offenses and the sentence.